**Joseph VREEMAN, Appellant,**

v.

**LeRoy DAVIS, etc., Defendant,**

**Champion Home Builders, Inc., Respondent.**

**No. CO–83–479.**

Supreme Court of Minnesota.

May 25, 1984.

John S. Beckmann, Austin, for appellant.

Roger E. Petersen, Rochester, for respondent.

SIMONETT, Justice.

On this record, the plaintiff purchaser has made out a jury issue on general damages for purchase of an allegedly defective mobile home, and the trial court should not have directed a verdict on this ground in favor of the defendant mobile home manufacturer. We reverse and remand for a new trial.

In March 1978, plaintiff-appellant Joseph Vreeman purchased a new mobile home from a local dealer for $16,900. The mobile home was manufactured by defendant-respondent Champion Home Builders, Inc., and was installed by the local dealer onto a foundation erected by a contractor Vreeman had hired. Soon after installation, it was discovered that when it rained the mobile home leaked. After living in the home for 2½ years and attempting various repairs, Vreeman and his family moved out and thereafter commenced this lawsuit for damages against defendant Champion Home Builders and the local dealer. A default judgment was entered against the dealer, who had left the state and apparent-

ly had gone out of business, leaving only the case against the manufacturer.

A 6-day trial ensued. Champion Home Builders did not deny the mobile home was extensively damaged but contended that the damage resulted from improper installation by the dealer-installer or occurred when the home was later readjusted on the foundation at Vreeman's direction. At the close of all the evidence, the trial court granted defendant Champion Home Builders' motion for a directed verdict on the grounds that as a matter of law plaintiff Vreeman had failed to prove any general damages.

The parties agreed at trial that the measure of damages for breach of warranty was the difference between the market value of the mobile home as warranted and the actual market value of the mobile home at the time of its acceptance by the plaintiff-purchaser. The defendant argued, and the trial court agreed, that while plaintiff may have proved the market value as warranted, he had presented no credible evidence of the actual market value of the mobile home as accepted, and, therefore, the jury had no basis for determining diminution in value. Thus the claim for general damages, an essential element of the cause of action, was unproven and the cause of action failed.

Plaintiff Vreeman was never asked to give his opinion of the market value of the mobile home as warranted and as he received it. Instead, plaintiff testified only that he paid $16,900 for the new mobile home, that his family lived in the home until December 1980, by which time "it wasn't fit to live in," and that "I wouldn't dare rent it." Nevertheless, the trial court gave plaintiff the benefit of the doubt and construed plaintiff's testimony to mean that the market value as warranted was $16,900 and the value on the market (not just to plaintiff personally) as accepted was nothing. The trial court further ruled, however, "as a matter of law, that the mobile home had a market value at the time of its delivery and acceptance by the plaintiff. * * * [A]s a matter of law, * * * it has salvage value."

Considering plaintiff's testimony, as we must, in the light most favorable to plaintiff, we believe, as did the trial court, that this testimony can be understood to convey plaintiff's opinion that the mobile home had diminished in market value from $16,900 to no value. We do not, however, think the opinion of no market value can be rejected as a matter of law. An owner is competent to express an opinion on the market value of his or her property, and ordinarily any weakness in the foundation for that opinion goes to its weight, not its admissibility. *Jackson v. Buesgens*, 290 Minn. 78, 82, 186 N.W.2d 184, 186–87 (1971). In *H.P. Droher & Sons v. Toushin*, 250 Minn. 490, 501, 85 N.W.2d 273, 281 (1957), we found the owner's opinion, "standing alone," to be of little probative value in the absence of any showing that the owner was familiar with the market value of similar property. Here, by contrast, plaintiff Vreeman had comparison-shopped for a year before buying his mobile home, and this evidence affords sufficient foundation to give plaintiff's opinion a measure of credibility and probative value.

The trial court thought it incredible that the new mobile home, at the time it was delivered and accepted by plaintiff, as well as later, would not have had at least some salvage value. Minn.Stat. § 336.2–714 (1982) provides that the measure of damages is diminution in value "at the time and place of acceptance" of the goods, but adds "unless special circumstances show proximate damages of a different amount." Here, assuming the new mobile home leaked because of defects in its manufacture, these defects and their seriousness only became evident over a period of time, and this would be "special circumstances" permitting the diminished value of the mobile home to be ascertained at the later date. *See Mountaineer Contractors, Inc. v. Mountain State Mack, Inc.*, 268 S.E.2d 886, 893–94 (W.Va.1980) ("where it is extremely doubtful that a definite figure can be ascertained representing the actual val-

ue of the goods which are the subject of a breach of warranty action, either at the time of the transaction or at the time of delivery, special circumstances exist justifying the use of some other measure of damages than that ordinarily used"); *Holm v. Hansen,* 248 N.W.2d 503, 510–11 (Iowa 1976) (where cattle had latent disease at time of purchase, "special circumstances" warranted buyer's recovery for loss eventually sustained to entire herd); *Alafoss v. Premium Corporation of America, Inc.,* 599 F.2d 232, 237–38 (8th Cir.1979) (remanding damages award for recalculation under "special circumstances" exception of Minn.Stat. § 336.2–714(2) (1966)). We might add, too, that if the mobile home had salvage value, there is no evidence in the record of what it might be. Perhaps the cost of retrieving any salvage outweighed its worth. *See Twin Lakes Manufacturing Co. v. Coffey,* 222 Va. 467, 475, 281 S.E.2d 864, 868 (1981).

In any event, implicit in plaintiff's opinion of no market value is that the mobile home had no offsetting reasonable salvage value. It cannot be said that this implication is without any credibility, particularly when defendant Champion Home Builders chose not to present evidence to the contrary. A similar evidentiary void existed in *H.P. Droher & Sons,* where the building contractor presented no evidence in opposition to the owner's opinion of market value. We observed that "[o]rdinarily, when a litigant is willing to gamble on the outcome of a lawsuit and sit silent when he had an opportunity to present evidence, he should be bound by the result, whatever it might be." 250 Minn. at 502, 85 N.W.2d at 282. In *Peterson v. Bendix Home Systems, Inc.,* 318 N.W.2d 50 (Minn.1982), the defendant similarly gambled but lost. There, the owner testified she received a mobile home which had no market value, and the defendant offered no disputing evidence. Observing that the case went to the jury on an "all or nothing" theory, we affirmed a jury verdict awarding plaintiff her full diminution in value.

We can appreciate the trial court's quandary with the meager evidence submitted on the measure of damages. Nevertheless, we do not think that defendant's failure to submit evidence of salvage value precluded jury consideration of plaintiff's valuation testimony. It was, therefore, error to direct a verdict for the defendant.

Reversed and remanded for a new trial.

KELLEY, J., took no part in the consideration or decision of this case.